I'm going to move to case number five, appeal number 19-2377, United States v. Michael Propst. And Mr. Hillis, we'll begin with you. Good morning. May it please the court, counsel, my name is Daniel Hillis, I'm with the Federal Public Defender's Office, and I represent Mr. Propst. The district court erred by relying on inaccurate information and by inadequately explaining why it upwardly varied by 54 months. The parties disagree about the standard of review, however, both the errors that I've mentioned are procedural errors, and the standard of review for the court's Cazora decision says that the adequacy of the district court's explanation for an upward variance is reviewed de novo, and United States v. Miller says that the use of de novo review is appropriate when a judge relied on inaccurate information to impose sentence. I believe that we can prevail under any standard of review, that is, even if we had to go forward on plain error review, but I will ask if the court has questions about standard of review such that I can answer any questions the court may have. And if there are none, I'll move to the merits. So, moving to the merits, a judge's reliance on inaccurate information is established when the record shows the judge gave explicit attention to this information, uses it to impose sentence, or specifically considers it when imposing sentence. In here, Mr. Probst's PSR at paragraph 65 to 78 showed he had 31 convictions for unlawful phone calls, but the appendix, page 36, showed that in sentencing, the judge incorrectly said Mr. Probst had 41 convictions, and while 31 convictions is a lot, 41 convictions is a lot more, and the information, therefore, the judge relied on was incorrect and substantial. Mr. Probst tried to bring the mistake to the judge's attention, and he mentioned that there were 105 calls, and the judge, though, did not go further into the matter and impose sentence as if Mr. Probst had, in fact, committed 42 offenses that resulted in convictions. And so, for this reason, pursuant to the court's Miller decision, we believe that remand is appropriate so that the court can re-sentence Mr. Probst, and, of course, we don't know what the impact of the incorrect information was on the judge's sentencing decision. The government says to consider context and to look at the aggregate aspects of the sentencing hearing, but the authority is pretty well settled that you don't have to establish any prejudice because there's no way of knowing the impact that the misinformation had on the imposition of sentence. The only appropriate course is to remand, and that's what we'd like to have happen here. Does the court have questions about this? I do not at this point, Judge Ripple. Do you have questions? No, thank you. Judge Scudder? No, I'm following it just fine. Thank you. Mr. Hillis, would you like to reserve the remainder of your time? I'd like to touch briefly on the gall issue in the case about the adequacy of the sentence that the judge gave for the nine guideline punishment that he imposed. That's fine. Note that the upward variance in this case was approximately 200 percent, just a little less than that. The judge didn't sufficiently particularize the circumstances of the case to show why that was warranted. He noted the calls were obscene, but of course, that is axiomatic when the convictions are for obscene phone calls. He said the crimes were serious, but again, that is anticipated and is part of the counts of conviction. He talked that Mr. Probst had poor character, which may not be unexpected given the PSR, so that is also common to this type of case. And he said that my client may be sexually attracted to children, but that's speculative, and it's not an appropriate basis to justify anything. Speculative information, efforts by the judge to anticipate things, they need to be based on facts. Mr. Probst seemed to take pleasure in making calls, but I recall no convictions for offenses where a child was a victim or a diagnosis of pedophilia, so the speculation by the judge was particularly improper, and with that, I reserve the balance of my time. Thank you, Mr. Hillis. We're now going to move Mr. Koenig to you. Thank you, and may it please the court, my name is Jonathan Koenig. I appear on behalf of the United States this morning. First, I would like to say don't lose sight of the forest for the trees. Mr. Hillis has zeroed in on two inaccuracies that he claims require vacating Mr. Probst's 84-month sentence. We'll discuss those in a minute, but the big picture is this. The defendant entered into a very favorable plea agreement that called for the government to dismiss several counts and forego charges in both Wisconsin and Delaware. As part of that agreement, the party stipulated to a sentencing range of 60 to 120 months, which was significantly above the anticipated guidelines range. They agreed, in other words, that the guidelines range was wholly inadequate, and at sentencing, Probst's counsel underscored this by admitting that it would have been, quote, foolish for him to recommend the guidelines sentence in light of the offense conduct and his client's history. The sentencing judge essentially split the difference between 60 and 120 months and offered a justification of that sentence that we maintain was sufficient under any standard of review. He touched upon the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for deterrence. In his remarks and also in his written statement of reasons, the judge noted the extreme nature of the offense conduct as his principal justification for an above-guideline sentence. I won't belabor the extreme nature of the conduct here because it speaks for itself and it's well described in the briefs. These harassing calls were not of the Prince Albert and McCann variety. They were horrific, and as the defendant admitted during his elocution, they had a tremendous impact on victims. Now, turning to the trees that my opponent is concerned with, the 41 versus 31 prior convictions for the same sort of conduct. First of all, this exchange in the sentencing record takes place before the judge offers a justification for the sentence. There was ample opportunity for defense counsel to object, and he did not. I don't think that the record supports the fair inference that he was trying to object here. It's pretty clear that the judge and the prosecutor are talking past each other. The judge is interested in the number of calls that are relevant conduct. The prosecutor misunderstands and gives the total number of convictions for similar conduct. He, the prosecutor, misspeaks and gives the number 41, which is the total number of convictions, not the total number of prior convictions for making harassing or obscene phone calls. The judge then repeats the statement of the prosecutor as if correcting him and pivots back to what he's interested in, which is relevant conduct. He never comes back to that 41 number when justifying the sentence. And so it's true that defendants have a right to be sentenced on the basis of accurate information. But Miller, which my opponent talks about, says that to overturn a sentence for a violation of this right, the defendant must show that the information was inaccurate and that the sentencing court relied on the inaccurate information. What's missing here is a basis for inferring that Judge Griesbach relied on 41 versus 31 in imposing sentence. In Miller, by contrast, the sentencing judge inaccurately stated the information about the defendant's prior felonies, I think, four different times. I had a similar observation about the judge's comment on criminal history at page 41 of the transcript. Here, he's reflecting on the defendant's extensive criminal history, and he's wondering aloud whether Category 4 captures that history adequately. Maybe he wonders some of these calls went unprosecuted. That doesn't seem like an unreasonable thing to wonder about, given the repetitive nature of this conduct from Mr. Probst. But it doesn't matter, because the judge immediately says that even if Probst were at Category 6, the advisory range wouldn't be anywhere close to 60 to 120 months. And that's true. It would be something like 33 to 44 months. So, other considerations are driving this sentence, as the judge goes on to make clear, in particular, the nature of the conduct at issue. We ask you to affirm the sentence because the defendant has not shown that the judge's explanation was deficient or that he relied on inaccurate or impermissible information in reaching that sentence. Thank you, Mr. Koenig. Are there any questions from the panel? I have no questions. Judge Ripple or Judge Scudder? No, thanks. Not from me either. Thank you. Thank you, Mr. Koenig. We'll now move Mr. Hillis back to you. The clock shows 5 minutes, 23 seconds. Thank you. Just the prosecutor's reference, the government's reference here, rather, to the forest and support. The law puts a check on the judge's ability to rely on misinformation. It flat out prohibits it. The Tucker and Townsend line of cases from the Supreme Court, this court's jurisprudence, United States, Exwell, Welch v. Lane, none of those precedents allow for a judge to rely on misinformation when imposing a sentence. And neither did the plea agreement allow for the judge to consider misinformation as if that were possible anyway. So the central concern here is that the judge under the Chapman case may not give explicit attention to misinformation prior to imposing a sentence. And when the judge does, as the record shows that happened here, there is an error that allows for relief and requires relief under the cases that I mentioned. Those principles are well established. The government has done a fine job in trying to explain the context and go through all of what occurred at the sentencing, but it cannot get around the fact that the judge relied on the misinformation. The consequences are very simple. A remand should issue. And in the course of the remand, the judge can consider all of the necessary information, but he cannot consider the misinformation. And the prosecutors, excuse me, the government, again, did a nice job laying out what the nature of the calls were. We've never backed down from that. We've acknowledged what the calls were. They were serious. They were obscene. But that's part of what the offenses of conviction are. And so the judge didn't do anything to show why it was under Gaul that this considerable upward variance has been adequately explained to show why the sentence should be affirmed on appeal. So for these reasons, we ask that the court vacate the remand for resentencing. Unless the court has further questions, I have nothing else. Thank you, Mr. Hillis. Thank you, Mr. Koenig. The case will be taken under advisement.